UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE L. OLIVA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-18-CV-00015-FM |
| | § | |
| UNITED STATES OF AMERICA; | § | |
| MARIO J. NIVAR; HECTOR | § | |
| BARAHONA; and MARIO GARCIA, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NIVAR'S MOTION TO DISMISS

Before the court is "Motion to Dismiss the Plaintiff's Original Complaint and Brief in Support, filed by Defendant, Mario J. Nivar" ("Motion") [ECF No. 30], filed October 16, 2018 by Mario Nivar ("Nivar"); and "Plaintiff's Response to Defendant Mario J. Nivar's Motion to Dismiss Plaintiff's Original Complaint and Brief in Support" ("Response") [ECF No. 40], filed November 8, 2018 by Jose Oliva ("Plaintiff"). Based on the Motion, Response, and applicable law, the Motion is **DENIED IN PART** and **GRANTED IN PART**.

## I. BACKGROUND

*A. Factual Background and Procedural History*

Plaintiff has alleged the following facts.[1] Plaintiff visited the Veteran Affairs Health Care System ("VA") on February 16, 2016 for a scheduled appointment.[2] The VA is located at 5001 N. Piedras St. in El Paso, Texas.[3] To enter the VA, visitors are required to go through a

---

[1] "Plaintiff's Original Complaint" ("Compl.") 1, ECF No. 1, filed Jan. 16, 2018.

[2] *Id.* at 3 ¶ 10.

[3] *See id.* at 2 ¶ 6.

1

metal detector and run their personal belongings through a similar machine.[4] As Plaintiff entered

the VA, VA Police Officers Mario Garcia, Hector Barahona, and Nivar (collectively,

"Defendants") instructed Plaintiff to empty his pockets into an inspection bin and he complied.[5]

Nivar requested Plaintiff's identification.[6] Plaintiff explained he could not show his

identification, as it was in the inspection bin.[7] Defendants then instructed Plaintiff to walk

through the metal detector.[8]

   As Plaintiff attempted to follow the Defendants' order, Plaintiff alleges Nivar placed him

in a chokehold.[9] Barahona restrained Plaintiff's left arm and forced it behind Plaintiff's back.[10]

This resulted in a loud popping sound.[11] Plaintiff asserts he never resisted, raised his voice, or

attempted to confront Defendants.[12] Defendants pinned Plaintiff to the ground, secured him in

handcuffs, and detained him in a side room.[13] Plaintiff was charged with disorderly conduct.[14]

---

[4] *Id.* at 3 ¶ 10.

[5] *Id.* at 3 ¶ 11

[6] *Id.* at 3 ¶ 12.

[7] Compl. 3 ¶ 12.

[8] *Id.* at 3 ¶ 13.

[9] *Id.* at 3 ¶ 10.

[10] *Id.* at 3 ¶ 14.

[11] *Id*

[12] *Id.* at 4 ¶ 17.

[13] Comp. 4 ¶¶ 15–16.

[14] *Id.* at 4 ¶ 17.

Plaintiff claims to have undergone shoulder surgery, in addition to seeking treatment for difficulty swallowing, ear pain, ear infection, and persistent hoarseness.[15] Plaintiff also alleges to still suffer aggravated symptoms of post-traumatic stress disorder.[16]

On January 16, 2018, Plaintiff filed suit against the United States of America ("Government") and Defendants, bringing claims under the Federal Tort Claims Act ("FTCA"), 18 U.S.C. § 2671 *et. seq.* and *Bivens*.[17] Nivar moves to dismiss Plaintiff's *Bivens* claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[18]

### B. Parties' Arguments

Nivar claims Plaintiff must fail as: (1) Plaintiff's claim is an inappropriate extension of *Bivens*; and (2) qualified immunity bars any relief.[19] Nivar argues this is an inappropriate extension of *Bivens* because it is limited to only a few Constitutional violations by the Supreme Court's holding in *Ziglar v. Abbasi*,[20] and the alleged facts would extend this scope.[21]

In the alternative, he argues this case includes special factors which caution extending *Bivens*.[22] Specifically, Nivar focuses on national security concerns, which previous decisions have held warrant curtailing *Bivens* remedies.[23] As Plaintiff may receive relief under the FTCA,

---

[15] *Id.* at 4 ¶¶ 18–20.

[16] *Id.* at 4 ¶¶ 18–20.

[17] *Id.* at 5 ¶¶ 21–22, 3 ¶ 10.

[18] *See* "Motion to Dismiss the Plaintiff's Original Complaint and Brief in Support, filed by Defendant, Mario J. Nivar" ("Mot."), ECF No. 30, filed Oct. 16, 2018.

[19] Mot. 2 ¶ 2, 9 ¶ 19.

[20] 137 S. Ct. 1843 (2017).

[21] Mot. 3 ¶ 6.

[22] *Id.*

[23] *Id.* at 7 ¶¶ 14–15 (citing to *Hernandez v. Mesa*, 885 F.3d 811, 814 (5th Cir. 2018)).

Nivar contends *Bivens* should not be extended to include this specific alleged constitutional violation.[24]

Finally, he claims that the privilege of qualified immunity renders him immune from liability.[25] In support, Nivar argues his actions did not violate clearly established law.[26] Nivar also claims Plaintiff's pleaded facts, while conceivable, do not present a plausible set of circumstances in which excessive force was applied.[27]

Plaintiff asserts his claim of excessive force is not a novel application of *Bivens*.[28] Plaintiff seemingly incorporates this argument for his Fifth Amendment claims, but provides no further detail or specificity.[29] Plaintiff opposes Nivar's argument that the allegations are only conceivable, explaining that officers can act simultaneously to violate an individual's constitutional rights.[30] Finally, Plaintiff argues that Nivar's use of a chokehold was in violation of clearly established law and its use was objectively unreasonable.[31]

---

[24] *Id.* at 9 ¶ 18.

[25] *Id.* at 9 ¶ 19.

[26] *Id.* at 10 ¶ 20.

[27] Mot. 12 ¶ 23.

[28] "Plaintiff's Response to Defendant Mario J. Nivar's Motion to Dismiss Plaintiff's Original Complaint and Brief in Support" ("Resp.") 5, ECF No. 40, filed Nov. 8, 2018.

[29] *See generally* Mot.

[30] Resp. 4–5.

[31] *Id.* at 4.

4

## II.    APPLICABLE LAW

### A.    *Motion to Dismiss Pursuant to Rule 12(b)(6)*

Federal Rule of Civil Procedure Rule 12(b)(6) allows dismissal of a complaint for

"failure to state a claim for which relief can be granted."[32] "The central issue is whether, in the

light most favorable to the plaintiff, the complaint states a valid claim for relief."[33] To survive a

motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible

on its face."[34] "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully."[35] "[F]acial plausibility"

exists "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[36] Therefore, a complaint is not

required to set out "detailed factual allegations," but it must provide "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action."[37] Although the

court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory

allegations similar treatment.[38]

---

[32] FED. R. CIV. P. 12(b)(6).

[33] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[34] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[36] *Id.* (citing *Twombly*, 550 U.S. at 556).

[37] *Twombly*, 550 U.S. at 555.

[38] *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

## III.  DISCUSSION

### A.  Fourth Amendment Bivens Claim

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,[39] the Supreme Court held that individuals could bring an implied cause of action under the Fourth Amendment.[40] There, the plaintiff sought recovery for damages caused when federal narcotics performed a warrantless search and seizure of his home.[41] He further alleged officers used excessive force in effecting the arrest.[42] The Court found the plaintiff could recover against a federal agent acting under color of federal authority where the agent's conduct was unconstitutional.[43] The Court has extended this implied cause of action to alleged violations of the Fifth Amendment[44] and Eighth Amendment.[45] However, the Court has since directed that extending *Bivens* claims are a disfavored judicial activity[46] and has "consistently refused to extend Bivens to any new context or new category of defendants."[47] The Fifth Circuit has elaborated that *Bivens* excessive force claims have two distinct categories: (1) claims with special factors; and (2) "garden variety" claims.[48]

---

[39] 403 U.S. 388 (1971).

[40] *See id.*

[41] *Id.* at 389–90.

[42] *Id.* at 389.

[43] *Id.* at 411.

[44] *Davis v. Passman*, 442 U.S. 228, 248–49 (1979).

[45] *Carlson v. Green*, 446 U.S. 14, 19 (1980).

[46] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citing to *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

[47] *Id.* (citing to *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

[48] *Hernandez v. Mesa*, 885 F.3d 811, 814 (5th Cir. 2018); *see also De La Paz v. Coy*, 786 F.3d 367, 375 (5th Cir. 2015) ("Consequently, this court's past cases have not decided whether Bivens extends to claims arising from civil immigration apprehensions and detentions, *other than those alleging unconstitutionally excessive force*").

Where a *Bivens* claim arises in a new context, a court considers special factors which may counsel hesitation.[49] Absent Congressional directive, courts are "reluctant to intrude" into domains reserved for the legislative and executive branches.[50] Among these Special factors is national security.[51] For instance, in *Hernandez v. Mesa*,[52] the Fifth Circuit found that national security concerns can defeat *Bivens* claims against Border Patrol Agents.[53] Specifically, these national security concerns involved an international element contained in the job duties and the real danger of terrorism.[54] The Fifth Circuit highlighted how *Bivens* liability may "undermine the Border Patrol's ability to perform duties essential to national security."[55] Despite this, the Fifth Circuit was clear that domestic cases would be different, reasoning that "the defining characteristic of this case is that it is *not* domestic."[56] Therefore, claiming national security concerns has a much less risk of abuse.[57]

Courts also consider whether there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and

---

[49] *Abbasi*, 137 S. Ct. at 1857 (citing to *Carlson*, 446 U.S. at 18).

[50] *Id.*

[51] *Id.* at 1861.

[52] 885 F.3d 811 (5th Cir. 2018).

[53] *Id.* at 823.

[54] *See generally id.*

[55] *Id.* at 819.

[56] *Id.*

[57] *Id.*

correcting a wrong."[58] An additional consideration is whether an alternative remedy exists to limit the availability of a *Bivens* remedy.[59]

Like *Bivens*, this case involves allegations that Defendants, including Nivar, violated his Fourth Amendment right to be free of excessive force.[60] *Bivens* also involved a claim of excessive force, as seen where the complaint alleged the officers used unreasonable force during an unlawful arrest.[61] Additionally, the Fifth Circuit's holding that there are "garden variety" *Bivens* excessive force claims[62] show Plaintiffs claim may proceed, absent special considerations.

Nivar asserts this case is a new application of *Bivens*, as VA Police Officers are a new class of defendants.[63] This argument is an overreach. Like the federal officers in *Bivens*, VA Police Officers are federal law enforcement officers.[64] *Bivens* is not contingent on the specific category of federal law enforcement officers involved in the alleged constitutional violation. Rather, *Bivens* looks at whether the official was simply federal law enforcement or a high-level decisionmaker.[65]

---

[58] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1858 (2017).

[59] *Id.*

[60] Resp. 5.

[61] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971).

[62] *Hernandez v. Mesa*, 885 F.3d 811, 814 (5th Cir. 2018).

[63] Mot. 6 ¶ 11.

[64] U.S. Dept. of Veterans Affairs, Office of Security and Law Enforcement, *Our Mission*, https://www.osp.va.gov/OSandLE_Overview.asp (accessed on Jan. 2, 2019) (describing the VA Police's mission: "Deliver professional law enforcement and security services, while maintaining law and order, and the protection of persons and property on VA campuses and building's [sic] under the jurisdiction of the Department of Veterans Affairs.").

[65] *Bivens*, 403 U.S. at 411; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

In support of his contention that VA Police Officers should be considered a separate class of defendants, he attempts to draw support from *Abbasi*, where high-level government officials were held to be a new class.[66] *Abbasi* dealt with two groups of defendants: (1) the Attorney General, Federal Bureau of Investigation Director, and the Immigration and Naturalization Service Commissioner; and (2) the federal facilities warden and assistant warden.[67] Neither of those two groups are similar to a VA Police Officer. VA Police Officers simply do not have a similar level of discretion, nor would their behavior be chilled in a similar manner. A VA Police Officer acting in the manner alleged is no different than any other federal law enforcement officer effectuating the law. Therefore, this case does not present a new *Bivens* context.

Nivar further alleges since Plaintiff has the potential for relief under the FTCA, a *Bivens* remedy is not available.[68] This is incorrect. The FTCA is the exclusive remedy of specific claims enumerated by Congress.[69] However, the FTCA expressly does not extend to general constitutional excessive force claims.[70] Excessive force is not a new *Bivens* cause of action, and potential alternative remedial structures do not prevent this claim from moving forward.

Lastly, Nivar argues that even if there are no alternative remedial structures, *Bivens* should not be extended if special factors counsel hesitation.[71] Nivar asserts that the principle of

---

[66] *Abbasi*, 137 S. Ct. at 1858.

[67] *Id.* at 1853.
[68] Mot. 9 ¶ 18.

[69] 18 U.S.C. § 2679.

[70] 18 U.S.C. § 2679(b)(2)(A); *see also Hernandez v. Mesa*, 885 F.3d 811, 830 (5th Cir. 2018).

[71] *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

Separation of Powers should give this court pause, explicitly national security.[72]  In support,

Nivar cites to *Hernandez v. Mesa*.[73]

In *Hernandez*, the Fifth Circuit held that *Bivens* did not extend to a Border Patrol agent

because of national security concerns.[74]  Defendant's reliance on *Hernandez* is misguided.

*Hernandez* is careful to acknowledge that in domestic cases, there is a danger for abusing the

phrase "national security."[75]  *Hernandez* distinguishes itself by focusing on the international

nature of defending the border.  The Fifth Circuit explained:

> "We hold that this is not a garden variety excessive force case against a federal
> law enforcement officer. The transnational aspect of the facts presents a "new
> context" under *Bivens*, and numerous "special factors" counsel against federal
> courts' interference with the Executive and Legislative branches of the federal
> government.[76]

The present case is purely a domestic matter.  No such international element exists here, nor is it

even suggested that an international element could exist.

Simply put, policing a VA Hospital entrance is not comparable to patrolling our country's

international borders, a controlling fact in *Hernandez*.  Border security is an important factor, as

the Supreme Court reasoned it is "much more difficult to believe that congressional inaction was

inadvertent" due to the national policy focus.[77]  As Nivar's argument goes beyond the scope of

national security, it is simply too broad.  National security does grant federal law enforcement

---

[72] Mot. 7 ¶ 14.

[73] 885 F.3d 811 (5th Cir. 2018).

[74] *Hernandez v. Mesa*, 885 F.3d 811, 819–20 (5th Cir. 2018)

[75] *Id.*

[76] *Id.* at 814.

[77] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017).

10

broad powers; yet it is not a magic wand that need only be waved to garner unfettered discretion. Therefore, Nivar's argument that national security is a special factor barring Plaintiff's claim must fail.

A *Bivens* claim for excessive force is not a novel claim, and there are no special considerations which cause these facts to extend *Bivens*. Therefore, Plaintiff has properly pleaded a *Bivens* claim for excessive force in violation of the Fourth Amendment.

### B. Fifth Amendment Bivens Claim

Plaintiff also seeks a *Bivens* remedy for violations of his Fifth Amendment rights.[78] Courts have not generally applied *Bivens* in the context of the Fifth Amendment.[79] Accordingly, Plaintiff's *Bivens* claim for a violation of the Fifth Amendment must fail.

Furthermore, Plaintiff's Fifth Amendment claim is vague and devoid of detail.[80] It is unclear if this claim is meant to cover Plaintiff's detention, Nivar's use of force, or both. Simply claiming Fifth Amendment injuries does not suffice. Even if Plaintiff provided more detail, Plaintiff may not pursue a Fifth Amendment *Bivens* claim, as it falls outside the scope of *Bivens*. Therefore, no *Bivens* remedy is available, and this claim is dismissed.

### C. Qualified Immunity

As Plaintiff's Fourth Amendment claim survives the *Bivens* challenge, the court considers whether Nivar is entitled to qualified immunity.[81] Government officials receive

---

[78] Compl. 5 ¶ 26.

[79] The lone Fifth Amendment *Bivens* claim was for gender discrimination. *See Davis v Passman*, 442 U.S. 228 (1979).

[80] Compl. 5 ¶ 26.

[81] Mot. 9 ¶ 19.

protection "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[82]

Courts employ a two-prong analysis to assess whether an officer may assert the privilege of qualified immunity.[83] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[84] However, analyzing them in order is "often beneficial."[85] The first prong is whether the evidence, in the light most favorable to the plaintiff, shows the officer violated the plaintiff's constitutional rights.[86] The second prong is whether the officer's actions were objectively reasonable in light of clearly established law.[87] Both prongs must be satisfied to defeat qualified immunity.[88]

### 1. Whether Plaintiff's Constitutional Rights Were Violated

The court looks to whether Plaintiff pleaded facts sufficient to show an injury resulted from excessive force and whether that excessive force was objectively unreasonable.[89] The court

---

[82] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[83] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[84] *Id.* at 236.

[85] *Id.*

[86] *Id.* at 232.

[87] *Id.*

[88] *Id.*

[89] *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016); *see also Elizondo v. Green*, 671 F.3d 506, 501 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)).

does not consider subjective intent in its analysis.[90] In this case, Plaintiff alleged that he was injured,[91] which came about as a result of Defendants applying force towards him.[92]

Courts analyze excessive force claims under the "objective reasonableness standard."[93] As officers deal with rapidly evolving situations, this standard does not employ hindsight to find the objective best course of action.[94] Instead, the court considers the totality of the circumstances "from the perspective of a reasonable officer on the scene."[95] In *Graham v. Connor*,[96] the court outlined several factors to consider: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect actively resisted.[97]

The severity of the crime cannot be taken into consideration if the plaintiff did not commit a crime.[98] Here, Plaintiff was charged with disorderly conduct—a misdemeanor—although he contends no crime was committed.[99] However, Plaintiff was never convicted of disorderly conduct. As Plaintiff was not convicted of a crime, this factor favors Plaintiff.

---

[90] *Graham v. Connor*, 490 U.S. 386, 397 (1989).

[91] Compl. 4 ¶¶ 18–20. The injuries alleged include: shoulder surgery, difficulty swallowing, ear pain, ear infection, persistent hoarseness, and symptoms of post-traumatic stress disorder.

[92] *Id.* at 3 ¶ 10, 14.

[93] *Graham*, 490 U.S. at 397.

[94] *Id.*

[95] *Id.* at 396.

[96] 490 U.S. 386 (1989).

[97] *Id.*

[98] *See Turmon v. Jordan*, 405 F.3d 202, 207 (5th Cir. 2005).

[99] Resp. 10; *see also* Compl. 4 ¶ 17.

Nivar casts Plaintiff's assertion as implausible, implying that, because Defendants acted simultaneously to restrain Plaintiff, there must have been some criminal activity.[100] The pleadings are devoid of allegations to support such a bald assertion. When viewing the pleadings in the light most favorable to the Plaintiff, the alleged events are well within the realm of plausibility. This factor thus favors the Plaintiff.

Similarly, there is nothing to suggest the officers felt there was a threat to an officer or building safety. In his complaint, Plaintiff's asserts he was attempting to comply with Defendants' orders and remained nonconfrontational throughout the interaction.[101] Simply complying with officer commands while remaining nonconfrontational is not a threat to safety. There are no present allegations of resistance. Plaintiff has pleaded that he was not actively resisting,[102] a fact which is plausible. The mere fact that Plaintiff was charged with a crime does not justify assuming the arrest was preceded by wrongdoing.

All three of the factors enumerated in *Graham* favor Plaintiff. Accordingly, Plaintiff has sufficiently pleaded facts to support a claim for a violation of his Fourth Amendment rights.

2.    Whether Nivar's Actions Violated Clearly Established Law

The second prong considers whether the officers' conduct violated clearly established law.[103] "If officers of a reasonable competence could disagree on this issue, immunity should be recognized."[104] This analysis is "highly fact-specific."[105] The protection of qualified immunity

---

[100] Mot. 12 ¶ 23.

[101] Compl. 3 ¶¶ 13–14.

[102] *Id.* at 3–4 ¶¶ 13–17.

[103] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

[104] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[105] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

can be overcome through cases which are "directly on point."[106] If no case is directly on point, precedent must show "beyond debate" that a constitutional violation occurred.[107]

In *Darden v. City of Fort Worth*,[108] the Fifth Circuit held that use of force is excessive where the officer "strikes, punches, or violently slams a suspect who is not resisting arrest."[109] In *Darden*, an officer choked and pulled the plaintiff's hands behind his back, despite the plaintiff "purportedly complying with the officers' orders and not resisting arrest."[110] The Fifth Circuit has further stated the law has "clearly established that violently slamming or striking a suspect who is not actively resisting arrest constitutes excessive use of force."[111] Accordingly, it is clearly established that an officer may not use excessive force when the individual is not resisting.[112]

Here, Plaintiff has alleged he was grappled violently and slammed to the ground.[113] Plaintiff also alleges Nivar restrained him with a chokehold, despite him not resisting the arrest.[114] Accordingly, when viewing the allegations in the light most favorable to the Plaintiff,

---

[106] *Darden v. City of Fort Worth*, 880 F.3d 722, 732 (5th Cir. 2018); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n.1 (5th Cir. 2009).

[107] *Darden*, 880 F.3d at 732.

[108] 880 F.3d 722 (5th Cir. 2018).

[109] *Id* at 732.

[110] *Id.* at 733.

[111] *Id.* at 732.

[112] *Id.* at 733.

[113] Compl. 3–4 ¶¶ 14–15.

[114] *Id.* at 3 ¶ 13, 4 ¶ 16.

Nivar's actions violated clearly established law, thereby defeating his defense of qualified immunity.

### 3. CONCLUSION

Plaintiff has pleaded a plausible *Bivens* claim for excessive force in violation of the Fourth Amendment. No such *Bivens* remedy exists for Plaintiff's ethereal Fifth Amendment claim. Finally, Nivar is not entitled to qualified immunity, as the complaint alleges sufficient facts that Plaintiff's Fourth Amendment rights were violated and Nivar's action violated clearly established law. Accordingly, the court enters the following orders:

1. It is **HEREBY ORDERED** that the "Motion to Dismiss the Plaintiff's Original Complaint and Brief in Support, filed by Defendant, Mario J. Nivar" [ECF No. 30] is **GRANTED** as to Plaintiff's Fifth Amendment *Bivens* claims.

2. It is **FURTHER ORDERED** that the "Motion to Dismiss the Plaintiff's Original Complaint and Brief in Support, filed by Defendant, Mario J. Nivar" [ECF No. 30] is **DENIED** as to the Fourth Amendment *Bivens* claim.

**SO ORDERED.**

**SIGNED** this _____ day of **January, 2019**.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**