IN THE UNTED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION



2019 JUL 16 AM 10: 25

| JOSE L. OLIVA, | § | |
|---|---|---|
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 3:18-CV-00015-FM |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| MARIO J. NIVAR, HECTOR | § | |
| BARAHONA, and MARIO GARCIA, | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS NIVAR, BARAHONA, and GARCIA'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE FRANK MONTALVO, U.S. DISTRICT JUDGE:

Comes now JOSE L. OLIVA, Plaintiff, and files this his response to Defendants Mario J. Nivar, Hector Barahona, and Mario Garcia's Motion for Summary Judgment:

## INTRODUCTION

On February 16, 2016, Jose L. Oliva ("Oliva"), a veteran, visited the El Paso Veteran Affairs Health Care System for a scheduled appointment. At this time, Veteran Affairs Police Officers Mario J. Nivar ("Nivar"), Hector Barahona ("Barahona"), and Mario Garcia ("Garcia") were manning the entrance and the metal detector station. Without provocation or justification, Defendants assaulted Oliva—placing him in a choke hold, jerking his left arm, and forcing him to the ground—causing serious bodily injury and mental distress. As a result, Plaintiff brought this Section 1983 claim against Defendants for violations of Oliva's Fourth Amendment constitutional rights including unlawful seizure and use of excessive force.

## EXHIBITS

Plaintiff attaches the following in support of this response:

    Exhibit A:    Jose L. Oliva Affidavit

    Exhibit B:    Video M2U00356

    Exhibit C:    Video M2U00355.MPG

    Exhibit D:    United States District Court Violation Notice, USA Bates No. 286.

## FACTUAL STATEMENT

On February 16, 2016, Jose Oliva visited the El Paso Veteran Affairs Health Care System for a scheduled appointment.[1] When he reached the metal detector station near the entrance of the building, Oliva placed all items on his person, including his required identification, into an inspection bin.[2] Nivar proceeded to ask Oliva for his identification.[3] Oliva calmly explained that his identification was in the inspection bin, which at this time was in Nivar's custody.[4]

Nivar then instructed Oliva to walk through the metal detector.[5] As Oliva attempted to comply with Nivar's instructions, Nivar him in a chokehold and Barahona, simultaneously, grabbed Oliva's left arm and violently jerked it several times.[6] Then Nivar, Barahona, and Garcia together forced Oliva to the ground and handcuffed him.[7] After the assault, Oliva had to undergo shoulder surgery, sought treatment for difficulty swallowing, ear pain, ear infection, and persistent hoarseness, and suffered aggravated symptoms of Post-Traumatic Stress Disorder.[8]

---

[1] Ex. A, Jose L. Oliva Affidavit, ¶ 4.
[2] *Id.* at ¶ 5.
[3] *Id.* at ¶ 6.
[4] *Id.*
[5] *Id.* at ¶ 7.
[6] *Id,* at ¶ 8.
[7] *Id.*
[8] *Id.* at ¶ 9.

## PROCEDURAL HISTORY

Oliva filed suit on January 16, 2018.[9] Defendant Nivar filed a Motion to Dismiss on October 16, 2018.[10] The Court granted in part and denied in part Defendant Nivar's motion to dismiss.[11] On July 8, 2019, Defendants Nivar, Barahona, and Garcia filed a motion for summary judgment.[12] This case is set for jury trial on September 16, 2019.[13]

## ARGUMENTS AND AUTHORITIES

The Court may grant a motion for summary judgment only if there are no issues of material fact.[14] An issue is material if its resolution could affect the outcome of the action.[15] At summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party.[16] The Court must disregard all evidence favorable to the movant that the trier of fact is not required to believe.[17]

Defendants argue that they are entitled to summary judgment for two reasons: (1) the individual defendants are entitled to qualified immunity for the claims brought under the Federal Tort Claims Act and (2) the individual defendants are entitled to qualified immunity for the *Bivens* claims.[18] As an initial matter, the Federal Tort Claims Act claims at issue in this suit are directed to the United States of America, not Defendants Nivar, Barahona, or Garcia.[19] In this case, the individual Defendants are not entitled to qualified immunity for the unlawful assault on Oliva.

---

[9] [Doc. 1].
[10] [Doc. 30]. Defendants Barahona and Garcia filed similar motions but these were dismissed as untimely. [Doc. 37]; [Doc. 38].
[11] [Doc. 51].
[12] [Doc. 80].
[13] [Doc. 49, p. 2].
[14] FED. R. CIV. P. 56(c); *Celotex Corp. V. Catrett*, 477 U.S. 317, 322 (1986).
[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[16] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).
[17] *Id.*
[18] [Doc. 80, Defs.' Mot. Summ. J., pp. 3-6, July 8, 2019].
[19] *See Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (holding that the proper defendant in a Federal Tort Claims Act suit is the United States, not individual employees).

Defendants Nivar, Barahona, and Garcia argue that the Court should grant their motion as to the *Bivens* because they are entitled to qualified immunity as law enforcement officers. An official is not entitled to qualified immunity if "a plaintiff establishes facts showing (1) that the official violated a statutory or constitutional right and (2) that right was 'clearly established' at the time of the challenged conduct."[20]

The summary judgment standard—that the Court may not weigh the evidence and must resolve all disputed fact issues in favor of the nonmovant—constrains determinations of qualified immunity.[21] This is particularly important because the question of whether a right is clearly established must be determined "on the basis of the 'specific context of the case' ... Accordingly, courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions.[22]

The evidence here, in the light most favorable to Oliva, establishes the violation of a constitutional right when Defendant Nivar, Barahona, and Garcia assaulted Oliva. The right that Defendants violated when they unlawfully assaulted Oliva was clearly established on February 16, 2016. Therefore, Defendants are not entitled to summary judgment with regard to their unlawful assault on Oliva.

## I. Defendants Nivar, Barahona, and Garcia's assault on Oliva constituted use of excessive force in violation of the Fourth Amendment.

To establish a Section 1983 excessive-force claim, "a plaintiff must show that he was seized and that he 'suffered (1) an injury that (2) resulted directly and only from the use of force that was

---

[20] *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).
[21] *Tolan*, 572 U.S. at 657.
[22] *Id.* (quoting *Saucier*, 533 U.S. at 201).

excessive to the need and that (3) the force used was objectively unreasonable.'"[23] In their motion for summary judgment, Defendants do not address this prong of the qualified immunity analysis, focusing instead on the clearly-established prong,[24] but, in the interest of completeness, Plaintiff will address this prong briefly below.

Throughout the course of this assault, Oliva's movement was restricted and his person was seized. Nivar, Barahona, and Garcia each seized Oliva when they placed him in a chokehold, jerked his arm upwards and back, and forced Oliva to the ground, respectively.[25] The security cameras of the El Paso Veteran Affairs Health Care System captured the events of that day and copies of those videos are attached as Exhibits B and C.[26] The videos show Oliva placing his items in the bin, indicating to Nivar that his items were in the inspection bin, and complying with all officer instructions when he was violently assaulted.[27]

Oliva suffered several injuries as a result of this unlawful assault.[28] His rotator cuff was severely injured, necessitating two surgeries.[29] He also had to seek treatment for difficulty swallowing, ear pain, ear infection, and persistent hoarseness.[30] Therefore, there is evidence that Oliva suffered an injury and that injury resulted directly and only from the use of force that was excessive to the need.

The use of force in this case was clearly excessive to the need. Oliva, a veteran, was present at the El Paso Veteran Affairs Health Care System for a scheduled appointment.[31] He had the identification required for his entry into the building and placed it, with his other personal property

---

[23] *Ballard v. Burton*, 555 F.3d 391, 402 (5th Cir. 2006) (quoting *Flores*, 381 F.3d at 396).
[24] *See* [Doc. 80, pp. 5-6].
[25] Ex. A, ¶ 8; *see also* Ex. B, Video M2U00356.MPG; Ex. C, Video M2U00355.MPG.
[26] Ex. A, ¶ 10.
[27] Ex. B; Ex. C.
[28] Ex. A, ¶ 11.
[29] *Id.*
[30] *Id.*
[31] Ex. A, ¶¶ 2, 4.

*Plaintiff's Response to Defendants Nivar, Barahona, and Garcia's
Motion for Summary Judgment*

Page 5 of 11

in the bins provided at the building's entrance.[32] Defendants became agitated and refused to listen to Oliva's explanation.[33] Oliva did not attempt to enter the secured area until he was waived through by Nivar.[34] Nivar, Barahona, and Garcia assaulted Oliva when he was lawfully present, unarmed, unthreatening, and complying with officer instructions. Based on this, the Defendant's use of force was objectively unreasonable.

The Defendants' excessive use of force was also objectively unreasonable. "Whether the force was reasonable under the Fourth Amendment is determined from the perspective of a reasonable officer on the scene, rather than with 'the 20/20 vision of hindsight'"[35] In determining whether use of force is unreasonable, courts must carefully consider the facts and circumstances of each case including: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.[36] Here, Oliva was only charged with a misdemeanor and was never convicted—this factor weighs in Oliva's favor.[37] There has been no evidence, not even in the affidavits attached to Defendants motion for summary judgment, that the officers felt that there was a threat to any officer, the public, or building safety—this factor also weighs in Oliva's favor.[38] Finally, there is a genuine issue of material fact that Oliva was not actively resisting or evading arrest before the Defendants began assaulting him—this factor also weighs in Oliva's favor.[39] Therefore, all *Graham* factors weight in Oliva's favor, and the Defendants' excessive use of force was objectively unreasonable.

---

[32] *Id.* at ¶ 5.
[33] *Id.* at ¶ 6.
[34] *Id.* at ¶ 7.
[35] *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).
[36] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[37] Ex. D, United States District Court Violation Notice, USA Bates No. 286.
[38] *See* [Doc. 80, Ex. 1-3].
[39] *See* Ex. A, ¶ 9; Ex. B; Ex. C.

## II. Defendants' assault on Oliva violated clearly established law at the time of the incident.

Construing all reasonable inferences in favor of Oliva and disregarding all evidence favorable to Defendants that the jury isn't required to believe, Oliva must show that it was clearly established that Defendants could not assault the non-threatening and complying Oliva. Therefore, the inquiry is whether it was clearly established on February 16, 2016 that officers may not choke, strike, or violently force to the ground a person who is not resisting arrest or threatening.

### 1. Nivar's assault on Oliva violated clearly established law on February 16, 2016.

It was clearly established on February 16, 2016, that putting the non-threatening and complying Oliva in a chokehold then force him to the ground violated his Fourth Amendment rights. The Fifth Circuit has previously held that striking, punching, or violently slamming a suspect who is not resisting arrest was excessive use of force.[40]

*Darden v. City of Fort Worth* the Fifth Circuit examined whether officers who assaulted a man in 2013 violated a clearly excessive force.[41] The Fifth Circuit found that an officer used excessive force when he "choked, punched, and kicked [the plaintiff], even though [the plaintiff] was purportedly complying with the officers' orders and not resisting arrest."[42] The Fifth Circuit further found that the officers' use of excessive force violated clearly established law at the time of the incident.[43]

Nivar's focus on the disputed claim that Oliva attempted to enter the clinic without appropriate identification is misplaced. The appropriate action when a person attempts to enter a secure area without identification is to arrest him. Officers are not entitled to use excessive force when

---

[40] *Darden v. City of Fort Worth*, 880 F.3d 722, 732-33 (5th Cir. 2018).
[41] *Id.* at 725-26.
[42] *Id.* at 733.
[43] *Id.* at 733.

attempting to effectuate an arrest on a suspect who is not resisting.[44] Construing all reasonable inferences in favor of Oliva and disregarding all evidence favorable to Nivar that the jury isn't required to believe, Oliva was not resisting arrest when he was placed in a chokehold and forced to the ground.

Here, three years after *Darden* occurred, Nivar restrained Oliva in a chokehold and forced him to the ground despite his not resisting arrest and complying with officer orders. Therefore, construing all reasonable inferences in favor of Oliva and disregarding all evidence favorable to Nivar that the jury isn't required to believe, it was clearly established that an officer could not choke and slam to the ground a suspect who was not resisting arrest.

### 2. Barahona's assault on Oliva violated clearly established law on February 16, 2016.

It was clearly established on February 16, 2016, that yanking the arm of the non-threatening and complying Oliva hard enough to injure his rotator cuff then force him to the ground violated his Fourth Amendment rights. As discussed above, the Fifth Circuit has previously held that striking, punching, or violently slamming a suspect who is not resisting arrest was excessive use of force.[45] As described above, it has been clearly established since at least 2013 that an officer violates clearly established law when he "choked, punched, and kicked [the plaintiff], even though [the plaintiff] was purportedly complying with the officers' orders and not resisting arrest."[46]

Barahona's focus on the disputed claim that Oliva attempted to enter the clinic without appropriate identification is misplaced. The appropriate action when a person attempts to enter a secure area without identification is to arrest him. Officers are not entitled to use excessive force when attempting to effectuate an arrest on a suspect who is not resisting.[47] Construing all

---

[44] *Darden*, 880 F.3d at 732-33.
[45] *Darden*, 880 F.3d at 732-33.
[46] *Id.* at 733.
[47] *Darden*, 880 F.3d at 732-33.

reasonable inferences in favor of Oliva and disregarding all evidence favorable to Barahona that the jury isn't required to believe, Oliva was not resisting arrest when he was placed in a chokehold and forced to the ground.

Here, Barahona yanked Oliva's arm violently and hard enough to cause serious injury then forced him to the ground despite the fact that Oliva was not resisting arrest and was complying with officer orders. Therefore, construing all reasonable inferences in favor of Oliva and disregarding all evidence favorable to Barahona that the jury isn't required to believe, it was clearly established that an officer could not violently yank a suspects arm or slam him to the ground when the suspect was not resisting arrest.

### 3. Garcia's assault on Oliva violated clearly established law on February 16, 2016.

It was clearly established on February 16, 2016, that forcing the non-threatening and complying Oliva to the ground violated his Fourth Amendment rights. As discussed above, the Fifth Circuit has previously held that striking, punching, or violently slamming a suspect who is not resisting arrest was excessive use of force.[48] As described above, it has been clearly established since at least 2013 that an officer violates clearly established law when he "choked, punched, and kicked [the plaintiff], even though [the plaintiff] was purportedly complying with the officers' orders and not resisting arrest."[49]

Garcia's focus on the disputed claim that Oliva attempted to enter the clinic without appropriate identification is misplaced. The appropriate action when a person attempts to enter a secure area without identification is to arrest him. Officers are not entitled to use excessive force when attempting to effectuate an arrest on a suspect who is not resisting. Construing all reasonable inferences in favor of Oliva and disregarding all evidence favorable to Garcia that the jury isn't

---

[48] *Darden*, 880 F.3d at 732-33.
[49] *Id.* at 733.

required to believe, Oliva was not resisting arrest when he was placed in a chokehold and forced to the ground.

Here, Garcia violently forced Oliva to the ground despite the fact that he was not resisting arrest and was complying with officer orders. Therefore, construing all reasonable inferences in favor of Oliva and disregarding all evidence favorable to Garcia that the jury isn't required to believe, it was clearly established that an officer could not violently force a suspect to the ground when he was not resisting arrest.

## CONCLUSION

There are genuine issues of material fact whether Defendants Nivar, Barahona, and Garcia violated Oliva's constitutional rights when they used excessive force and clearly established law prohibited that use of force. For these reasons, Oliva respectfully requests that the Court deny Defendants' motion for summary judgment.

Respectfully submitted,

THE LAW OFFICES OF ENRIQUE MORENO
701 Magoffin Avenue
El Paso, Texas 79901
(915) 533-9977
Fax: (915) 533-0033

By: ___/s/ Enrique Moreno___
ENRIQUE MORENO
State Bar No. 14430500
emoreno@morenolaw.us
ELENA ALICIA ESPARZA
State Bar No. 24101736
eesparza@morenolaw.us

**-AND-**

JOE A. SPENCER, JR.
State Bar No. 18921800
joe@joespencerlaw.com

1009 Montana Ave.
El Paso, Texas 79902
(915) 532-5562
Fax: (915) 532-7535

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the **15th day of July, 2019,** I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all Counsel of Record in accordance with the FEDERAL RULES OF CIVIL PROCEDURE as follows:

Lance Duke, Assistant U.S. Attorney
U.S. Attorney's Office - SDTX
One Shoreline Plaza
800 North Shoreline Blvd., Ste. 500
Corpus Christi, TX 78401
*361-888-3100-FAX*
lance.duke@usdoj.gov
*Attorneys for Defendant*
*United States of America*

Jim K. Jopling, Esq.
747 East San Antonio Ave., Suite 103
El Paso, TX 79901
*866-864-6854-FAX*
jim@joplinglaw.com
*Attorneys for Defendant*
*Mario J. Nivar*

Louis E. Lopez, Jr., Esq.
416 N. Stanton, Suite 400
El Paso, TX 79901
*915-543-9804 - FAX*
llopez@lelopezlaw.com
*Attorneys for Defendant*
*Hector Barahona*

Gabriel S. Perez, Esq.
Ortega McGlashan Hicks & Perez, PLLC
609 Myrtle Ave., Suite 100
El Paso, TX 79901
*915-542-3500-FAX*
gabrielperez@omhplaw.com
*Attorneys for Defendant*
*Mario Garcia*

　　　　　　　　　　　　　/s/ Enrique Moreno
　　　　　　　　　　　　　ENRIQUE MORENO

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE L. OLIVA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 3:18-CV-00015-FM |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| MARIO J. NIVAR, HECTOR | § | |
| BARAHONA, and MARIO GARCIA, | § | |
|     Defendants. | § | |

## AFFIDAVIT OF JOSE L. OLIVA

1. "My name is Jose L. Oliva. I am over 21 years old, of sound mind, competent and qualified to make this affidavit. I have personal knowledge of all facts stated in this affidavit, and I hereby swear and affirm that they are true and correct. I read, speak, and understand the English language.

2. "I am a veteran of the United States Air Force where I served for four years. I have lived in El Paso County, Texas since 1959.

3. "I have been going to the El Paso Veteran Affairs Health Care System for scheduled appointments for more than 20 years. Before February 16, 2016, I did not have any difficulties managing the security at the entrance of the building.

4. "On February 16, 2016, I had an appointment with Doctor Bush at the El Paso Veteran Affairs Health Care System at 2:00 p.m. When I arrived, the entrance of the El Paso Veteran Affairs Health Care System was manned by Mario J. Nivar and another Veteran Affairs Police Officer.

5. "Upon entry into the building, I emptied my pockets and placed all items into an inspection bin as required. Those items included my Veteran Affairs Identification Card. This identification card contains my personal information and identifies me as a veteran.

6. "Nivar asked me for my identification, and I calmly explained to him that it was in the inspection bin with my other personal items. He again asked for my identification and I again explained my identification was in the inspection bin.

7. "Nivar was agitated and instructed me to walk through the metal detector. He appeared to be upset and agitated. I started to walk through the metal detector as instructed.

8. "As I walked through the metal detector, Nivar suddenly attacked me. He put me in a chokehold, making it difficult for me to breath and hurting my throat and ears. At the same time, Captain Hector Barahona grabbed my left arm and jerked it upwards violently and then backwards, causing it to pop. Officer Mario Garcia then joined Nivar and Barahona and forced me to the ground and handcuffed me.

9. "At no point before I was attacked, was I told that I was going to be arrested or detained. At all times before I was attacked, I complied with the instructions given to me and remained calm. I did not, at any point, resist arrest or detention before I was attacked.

10. "The events of that day were captured by the security video of the El Paso Veteran Affairs Health Care System. Attached as Exhibits B and C are copies of the videos that fairly and accurately show the events of that day. Exhibits B and C clearly show when I placed my personal items in the inspection bin, my indications to Nivar towards the inspection bin where my identification card was, and an officer removing my items from the immediate area. Exhibit B also shows that I was complying with officer instructions and non-combative when the officers attacked me as I walked through the metal detector.

11. "The attack severely injured my shoulder, ear, and larynx. I have had two surgeries on my shoulder to repair my rotator cuff injuries. My larynx is permanently injured, and my voice is permanently hoarse. Finally, I suffered severe ear pain and an ear infection because of this assault."

FURTHER, AFFIANT SAYETH NOT.

SIGNED this 15th day of July, 2019.

_____
JOSE L. OLIVA

STATE OF TEXAS § 
§
COUNTY OF EL PASO §

SUBSCRIBED AND SWORN TO before me, this 15th day of July, 2019, to certify which witness my hand and official seal.

[Seal]


ROSA ARZAVALA
My Notary ID # 129508139
Expires July 31, 2021

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

# EXHIBIT B

# PLACEHOLDER FOR EXHIBIT B

Exhibit B is a video which cannot be filed electronically. A copy of Exhibit B will be physically delivered to the court on July 15, 2019.

# **EXHIBIT C**

# **PLACEHOLDER FOR EXHIBIT C**

Exhibit C is a video which cannot be filed electronically. A copy of Exhibit C will be physically delivered to the court on July 15, 2019.

# United States District Court Violation Notice

**CVB Location Code:** VAPS

**Violation Number:** 4539604
**Officer Name (Print):** M. GARCIA
**Officer No.:** 3136

4539604

## YOU ARE CHARGED WITH THE FOLLOWING VIOLATION

**Date and Time of Offense (mm/dd/yyyy):** 1400 / 02/16/2016
**Offense Charged:** ☒ CFR ☐ USC ☐ State Code — 38 CFR 1.218(b)(11)
**Place of Offense:** 5001 N. PIEDRAS, EL PASO, TX 79930 (3rd floor main entrance)
**Offense Description: Factual Basis for Charge:** 38 CFR 1.218(b)(11) — HAZMAT ☐
Disorderly conduct which creates loud, boisterous and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators and stairways or which tends to impede or prevent the normal operation of a service [illegible]

## DEFENDANT INFORMATION

**Phone:** (915) 581-1381
**Last Name:** OLIVA
**First Name:** JOSE
**M.I.:** L.
**Street Address:** 611 BLUFF CANYON CIRCLE
**City:** EL PASO
**State:** TX
**Zip Code:** 79912
**Date of Birth:** [redacted]
**Drivers License No.:** [redacted]
**CDL:** ☐
**D.L. State:** TX
**Social Security No.:** [redacted]
☒ Adult ☐ Juvenile | Sex ☒ Male ☐ Female | Hair: GRY | Eyes: BRN | Height: 5'9" | Weight: 142

**VEHICLE** VIN: CMV ☐
Tag No. | State | Year | Make/Model | PASS ☐ | Color

A ☐ IF BOX A IS CHECKED, YOU MUST APPEAR IN COURT.
B ☒ IF BOX B IS CHECKED, YOU MUST PAY AMOUNT INDICATED BELOW OR APPEAR IN COURT.

$ 250 Forfeiture Amount
+ $25 Processing Fee
**PAY THIS AMOUNT →** $ 275 Total Collateral Due

### YOUR COURT DATE
Court Address: 
Date (mm/dd/yyyy): 
Time (hh:mm): 

X Defendant Signature: REFUSED TO SIGN
(Rev. 01/2011) Original - CVB Copy

---

## STATEMENT OF PROBABLE CAUSE
(For issuance of an arrest warrant or summons)

I state that on FEBRUARY 16, 2016 while exercising my duties as a law enforcement officer in the WESTERN District of EL PASO,

SEE ATTACHED

The foregoing statement is based upon:
☒ my personal observation ☒ my personal investigation
☒ information supplied to me from my fellow officer's observation
☐ other (explain above)

I declare under penalty of perjury that the information which I have set forth above and on the face of this violation notice is true and correct to the best of my knowledge.

Executed on: 02/16/2016
Date (mm/dd/yyyy) Officer's Signature

Probable cause has been stated for the issuance of a warrant.

Executed on: _____
Date (mm/dd/yyyy) U.S. Magistrate Judge

HAZMAT = Hazardous material involved in incident; PASS = 9 or more passenger vehicle; CDL = Commercial drivers license; CMV = Commercial vehicle involved in incident

---

201602161400-2968

# EXHIBIT D

000286